**LOU–VAL CO., Inc., v. DORAN et al.**

District Court, E. D. Pennsylvania. December 8, 1928.

No. 4733.

Michael Serody, of Philadelphia, Pa., for plaintiff.

Warren C. Graham, Legal Adviser Prohibition Dept., and George W. Coles, U. S. Atty., both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. An outline of the fact situation is that the plaintiff has an existing permit; that it desires to have it extended or amended, or a new permit to issue (whatever the appropriate phrase is); that it has complied with all the formalities required by the law and the regulations; and that the Commissioner has refused the application. The ground of the refusal is the finding of the Commissioner that the permittee "is not a fit person" to hold a permit.

The plaintiff takes its stand successively upon three propositions of law:

(1) The indorsement upon an existing permit of its extension to a new product of manufacture (the formula for which has the required official approval) is a purely ministerial act.

(2) Although the extension may not be a purely ministerial act, the Commissioner may not refuse the extension without basing his refusal upon fact findings supported by evidence.

(3) There are no evidentiary facts in evidence to warrant a finding that the permit should not be extended to include the manufacture of the new product, the formula of which has been approved.

The first and second propositions raise questions of law. The third raises a question of law only in the sense of the distinction

between the sufficiency of evidence and its absence.

1. We defer the discussion of the legal merits of this proposition until after we have disposed of the others, except in so far as this has a bearing upon the third proposition, which will be discussed in its order.

■ 2. The second proposition, as a general proposition, we think to be sound. The inclusion of another product in the permit to manufacture should not be refused, unless there is something in the fact situation to call for such refusal.

3. This brings us to the final proposition, which, as there is at least some evidence, becomes a proposition of fact, in so far as it becomes whether the applicant has been guilty of such conduct or acts as call for a finding that he should not be intrusted with any permit. On the face of the refusal it presents this absurdity. The applicant has been found to be fit to hold a permit to make one thing, but unfit to hold a permit to make another, when the things to be made have the like official approval. This, however, is only a surface view.

The Commissioner has found that the applicant has conducted its business in such manner and made sales to such persons that it cannot safely be intrusted with a permit and is unfit to hold one. No court would impose an unfit permittee upon an official responsible for the proper use of permits. If, however, this permittee is unfit to hold the second permit, it is just as unfit to hold the first. There is, in consequence, an apparent glaring inconsistency in granting the first and refusing the second. The fact situation, however, is, as we have indicated, not as simple as thus stated. The first permit was issued, but of course on the assumption that it would not be abused. Subsequently a citation issued, charging an illegal diversion, and following the hearing upon this charge the permit was revoked. The revocation was reversed by the court on a bill of review and the permit reinstated. This reversal was a long time after the order of revocation. The order of revocation was reversed, because the record showed no findings and no evidence in support of the citation. The record as submitted to the court was found to be barren of the required findings and proofs. These very important features of the real record had been omitted from the record submitted. No reargument was, however, asked for, and the controversy was permitted to drop until revived by the present application.

The position of the Commissioner is in effect that a mistake was made in issuing the first permit to an unfit person, and that he should not be compelled against his well-supported judgment to make a second like mistake in granting another permit. The position of the plaintiff is that the fact merits of the first permit are res adjudicata and that the unproven charges, which could not found a revocation of the first permit, will not support a refusal of the second. Had the court passed upon the fact merits of the revocation of the first permit, the force of this argument would be felt. A perusal of the opinion accompanying the ruling, however, shows that the court did not reverse the order of revocation because of the insufficiency of the evidence to support the fact findings made, but because neither findings nor evidence were present. There was in consequence no determination of the facts.

We see no need at this time to go into the question of who was responsible for "the diminution in the record" which was submitted to the court. This takes us back to the first proposition. Broadly stated, we would not be inclined to affirm it. Approval of the formulæ according to which products are to be made goes only to the products; a withdrawal permit is directed to the permittee. The product may in consequence be approved, but a permit to withdraw alcohol be denied, because, although the product may be unobjectionable, the permittee may be otherwise.

### The Plaintiff's Theory.

The argument addressed to us is admittedly ingenious. The question is of its soundness. It is that there are three requisites to the lawful conduct of a business which calls for the use of alcohol in the manufacture of a nonbeverage product. What may be termed the chronological order is, first, the approval of the formula according to which the product may be manufactured. Official approval of this is provided for. The second is what is called a basic permit, which confers the lawful right to obtain the needed supplies of alcohol in the form or condition called "denatured." The third is, or at least may be, termed a withdrawal permit, which confers the right to use the alcohol in manufacture and to lawfully dispose of the product. Over the issue of these basic permits the Commissioner has control; but, when the manufacturer has an approved formula and a basic permit, his right to a withdrawal permit follows as a matter of course, and cannot be denied him. The con-

trolling and pivotal right is in consequence the right to this basic permit. He must, of course, have his formula approved, or he has no right to make use of his basic permit or to withdrawals; but, if he has both an approved formula and this basic permit, he has also the withdrawal right.

It follows that, when the Commissioner revokes a permit, what he revokes is the basic permit, and without this the approved formula and the withdrawal right come to nothing. So long, however, as the basic permit stands unrevoked, the withdrawal right remains. Were it otherwise, the refusal of the permit to withdraw would be a denial of the supply, and thus an unrevoked basic permit would be nullified, which would be tantamount to an indirect revocation. Such a revocation is unwarranted in the present case for two reasons: In the first place, an existing permit cannot be revoked without a citation; and, in the second place, the decree reversing the revocation before made, whether res adjudicata in the sense of an adjudication on the fact merits of the cause or not, was none the less a decree reinstating the permit, which, even if erroneous, could be corrected only upon a rehearing or appeal, and, as neither was had, the permit stands, and includes the right to a supply of alcohol (not exceeding in all the named limit) for use in the manufacture of a new product, the formula of which has been approved.

### The Opposing Theory.

The new formulæ submitted, although approved, are for wholly different products from those for the manufacture of which alcohol is withdrawn under existing permits. The present application, being for alcohol for new uses, is properly treated as an original application, and as such was properly denied. There is no inconsistency in the fact situation of an existing permit to withdraw alcohol for one purpose, and the denial of a permit to withdraw it for a wholly different use.

### Discussion.

The discussion of this question takes us back to the beginning. The Eighteenth Amendment confers the power upon Congress to legislate. Both it and the National Prohibition Act (27 USCA) are directed, not against the use of alcoholic liquors, but against traffic in them, and not against traffic in them for use, but for use as a beverage. Alcohol has other uses than as a component of beverages. Such uses are not unlawful, but there would be grave danger of diversion to an unlawful use, if the supply for lawful uses was not regulated. These regulations, both so far as found in the acts of Congress and in the Regulations promulgated by executive authority, are unavoidably of such frightful complexity that no one can make such an analysis of them as to get a clear view of the working system which they set up, without giving to the perusal of the law and the executive Regulations much time. This time we have given, but limit ourselves to a statement of the conclusions reached.

Obviously there is a difference between the approval of a formula and that of an application to manufacture. The difference may likewise be a real one between the act of granting a permit to secure a supply of alcohol for one use and a like permit for another use. We accept the proposition of counsel for plaintiff that the existing permit is in full force, and that no rights springing therefrom can be denied. We refuse to hold, however, that approval of a formula by one official, who has nothing to do with alcoholic supplies, automatically requires another official, who has all to do with such supplies, to grant what before was not permitted to be obtained. A supply of alcohol to manufacture a product cannot be obtained until the formula of manufacture has been approved, but permission to obtain a supply of alcohol (although necessary to the manufacture) does not follow as of course the approval of the formula. Application for such a permit as will grant a supply of alcohol for a new use is so far a new application as to give the Commissioner a like control over its issuance.

Counsel for plaintiff, who is fully familiar with all the intricate machinery of the law and the Regulations, rests his cause upon the soundness of this proposition, for he concedes that, if the application here were for what he terms a basic permit, the Commissioner could properly deny it. We take this to mean that, had the application here been a first application for a permit to obtain a supply of alcohol for a first-named product, the Commissioner might have lawfully denied it, although the formula of manufacture had been duly approved, but that he has no such power to deny a supply of alcohol (within the named limit) to a permittee, although it be for a new use, if the new product has been approved. If, then, the Commissioner is given the like discretion to grant or refuse a supply of alcohol for a new use as he had for a first use, he rightfully refused the application in the instant case. We hold to the latter proposition, conceding in turn that,

if the Commissioner had no such discretionary power, but that the basic permit included the right to a withdrawal supply for an approved new use (without an increased aggregate supply), this would be an indirect revocation, at least pro tanto, which could not be upheld.

The bill is dismissed for want of equity.